We'll hear argument next in Case 20-1650, Concepcion v. United States. Mr. McCloud? Mr. Chief Justice, and may it please the Court, the First Circuit held below that district courts are barred from considering intervening law and facts when deciding whether to impose a reduced sentence under the first setback. That holding conflicts with the law's text, and it flouts background principles of sentencing and judicial decision-making. The First Circuit's rule would also require courts to ignore information that is critical to the reasoned exercise of their sentencing discretion. Under the First Circuit's approach, the fact that a defendant was suspected in the murder of a prison guard would be an impermissible consideration when deciding whether to reduce that defendant's sentence. The government does not defend the First Circuit's rule. The judgment should therefore be vacated because the district court in this case plainly did not recognize its authority to consider intervening developments. The question for this court is what rule should apply on remand. The first option is that courts must consider relevant intervening law and facts just as they do in other sentencing proceedings. This is a modest requirement. Under a must-consider rule, the court has to pay respectful attention to arguments about intervening developments made by the parties. But the court, of course, does not have to be persuaded by those arguments, and it does not have to reduce the defendant's sentence. Our backup option, which the government endorses, is that courts may consider intervening law and facts. We think that a must-consider rule will lead to more consistent results in district courts and be more consistently reviewable on appeal. But either alternative before the court today is preferable to the First Circuit's rule. And the bottom line for both is the same. The First Step Act does not require courts to ignore relevant information. I welcome the court's questions. Mr. McCloud, if you are going to make the must- or mandatory argument, on what language do you rely? Justice Thomas, we have two textual bases for the must-consider argument. The first is Congress's use of the phrase, impose a reduced sentence. We think that that's a clear textual indication that what Congress wanted courts to do is to apply the Section 3553A factors, the factors that courts consider when they impose a sentence more generally. And many of those factors incorporate consideration of intervening legal and factual developments because they go to things like the history and characteristics of the defendant and the severity of the offense. The alternative textual basis, we would say, for the must-consider rule is that Section 404 clearly sets up a statutory scheme where district courts are supposed to exercise their discretion. And in the sentencing context, courts, of course, must be reasonable in exercising their discretion. And the way that Congress has established for courts to be reasonable is to apply the 3553A factors. Do you think that your discretionary or may permissive argument is a better, stronger argument than the mandatory argument? Your Honor, I think that they're both strong arguments. I guess the one advantage I would say that the must-consider argument has is that we think it would be more predictable for district courts because the parties will know that the court is going to pay attention to arguments about intervening developments. And I think the same is probably true for appellate courts. They will have the hook of the 3553A factors when they review the case. But just to be clear, Your Honor, we would be perfectly happy with an opinion that said courts may consider these developments. That's certainly better than first-service rule. Thank you. I don't really understand, either through your presentation or the government's, what this may argument is. I understand the idea that you must consider the different things. And at the end of the day, you can come out and say, well, I'm not going to change anything. Judges don't do that all the time. And I understand the argument that you can't look at the things and change it. But what is it? What is the may? You've already got the may in the must part. You have to consider it, but you don't have to do anything. It sounds to me like we're delegating to, or Congress or somebody's delegating to individual district judges the authority to determine what the law is. It's like a police officer, you know, that you can't park here or you pay, you have to pay, you know, $20. You know, it's one thing to say, yeah, the officer can say, you know, I'm not going to give you a ticket. I see you're coming down the street or whatever it is. Doesn't have to, you know, enforce whatever discretion he has. But the officer can't say, I think people ought to be able to park here. So I'm never going to give anybody a ticket for that. What is, what is this may argument? Well, Mr. Chief Justice, I think it stems from the fact that Congress clearly has set up a discretionary scheme in this statute. Courts have discretion to decide whether to impose a reduced sentence or not. And so when they're making that decision, we don't see anything in the text of the statute or in sentencing practice more generally that would suggest that courts are required to put certain information off limits. Well, right. But what you're saying is Congress passes discretionary rule, but the people in this main category are saying, I'm not going to exercise my discretion. I am never going to give a reduction to the sentence. Is that all right? That's, that's, I don't think that would be something that we would accept in any other area of the law where people have discretion. You would say, yes, in this particular case, you don't have to give a discretion, an adjustment. You have discretion not to do that. But the idea for somebody to decide, I am not going to exercise discretion. I'm just not going to look at it. I don't understand what, where that authority comes from. So, Mr. Chief Justice, I would agree with you that district courts do not have that authority. I think that courts could not erect categorical rules that they would never look at intervening developments or that they would never reduce a sentence under the First Step Act. I think it has to be an individualized defendant-by-defendant determination. But counsel, where does that come from? I mean, if it's May, and it is divorced and free-floating from 3553, and anything goes, I don't know on what basis this, or any court, would find an abuse of discretion under that standard that you're proposing. Justice Gorsuch, I agree with you. It would be difficult to find an abuse of discretion under that standard. The courts that apply... But isn't the Chief Justice's intuition absolutely right that if a court simply said, we would never, I will never do these things. I know Congress said I may, but I'm not going to do it. You know, I prefer not to. We would find that to be an abuse of discretion. I'm pretty confident. Likewise, if the district court said, I know that my original sentence had an egregious guidelines error, previously undiscovered, but absolutely egregious. It results in a grave injustice, but I prefer not to. Really? So, Justice Gorsuch, I agree with you and with the Chief Justice that in the first scenario, where the district court has erected a categorical rule that they will not reduce a sentence or look at intervening developments, that would be arbitrary and that would be an abuse of discretion. I think it is a much closer question in a case where, in a made-consider world, the court looks at all of the evidence and says, I just don't want to take a consideration of this. Even in the guidelines, the egregious guidelines error case, you're going to say that too? That's just, that's fine? We can just pass that one over? Justice Gorsuch, our position is that if make-consider means may, then yes, the district court has that discretion. That's one of the reasons why we think that the must-consider rule is the better rule. Go ahead. Is there any difference between your argument and a statute that says that the district court simply must conduct a new sentencing? That's what you want, isn't it? You want a new sentencing with the law as changed by the First Step Act, right? Justice Alito, we do think there are significant differences between this proceeding and a plenary resentencing. For example, in this proceeding, rules of waiver and forfeiture in law of the case would apply. And so, from our perspective, the scope of the proceeding is defined by the new arguments and new information that are presented to the court by the parties. The court doesn't have to work from the ground up. We also would take the perspective that the court looks at the changes from the Fair Sentencing Act as the starting point. We just don't think that that's an end point for the now. Well, why are you just pretending, not really pretending, but sentencing starts from scratch. Where does the judges come from, the discretion to impose a sentence? It comes from statutes, which say zero to 20 years, and they say nothing more within that. And this is the same. It says May. Same thing. Okay, now you've left out the giant actor in this. It's called the Sentencing Commission. And that applies because 3553. And so, why doesn't it? All the answers to these questions are, of course, the questioners are right. You could abuse your discretion, District Judge, and so can the Sentencing Commission abuse its discretion. So far, I don't think it has, but maybe. And so, this is just the same. If you want to treat this word May, which was written against the background of there being several actors, District Court, Sentencing Commission, Courts of Appeals, if we're going to treat this the same way, which I think the May would give us what Congress wanted, then there we are. Case is only worth a paragraph. It's May. That's what the statute says. How do you do it? The same way you do everything else in sentencing, where you have discretion. And by the way, if you look at what the Sentencing Commission has done, unfortunately, there aren't any members except, I think, for one. But its office has written about 20 pages on this. And they say, here's what you do, Judge, at the moment. What you do is you look to 3553. I think that's what the Office of Education says. So this isn't so tough. Now, you're going to agree with me because it ends up with May, but maybe you won't because you want must, but I don't know where you get the must from. I don't know where you get the May from. It's a statute. It's a statute. The May is not the May that Justice Breyer thinks is in the statute. The statute says, may impose a reduced sentence. Yes. May impose a reduced sentence, or you could not impose a reduced sentence. But the statute says nothing about what you have to consider in deciding whether to impose a reduced sentence. It says you may or you may not impose a reduced sentence. It says nothing about the consideration you have to undertake and the factors that you have to address. So I would think that a normal way to think about that question is, what do we usually do in resentencing procedures, in resentencing proceedings? So, what's the answer to that question? What do we usually do in resentencing proceedings? Your Honor, the answer is that courts usually apply the 3553A factors and they usually look to intervening legal and factual development. And feel obliged to do that, right? They don't think it's like, oh, something I can do if I'm feeling up to it and not do if I'm sort of feeling stressed. That's right, Your Honor. I do think that that's, again, one advantage of the must consider rule. I don't know. Is that completely... Well, I don't want to cut off your answer. I'm sorry. We were answering Justice Kagan, so go ahead. One advantage of the must consider rule is that it does not lead to a situation where courts are able to ignore information that everyone would agree is relevant. To go back to the example that I gave in my introduction, it's inconceivable to me that Congress would have wanted a court to make a decision about sentencing without accounting for the fact that the defendant is suspected in the murder of the prison guard. Well, that was really, that's an intriguing observation because do you think that that would be, there would be a constitutional problem with that? No, I don't think so. Somebody's been sentenced to, let's say, 10 years for an offense, but behaves really badly while in prison. And so Congress says under those circumstances, you can bring that person back before the sentencing judge and impose a new sentence so that the person is sentenced to a longer term? Justice Alito, I do think there would be constitutional questions if the court were able to impose a longer term. That is not an option under the First Step Act because the sentence has to be reduced. Oh, well, but you said in your introductory remarks it would be unthinkable for the court not to be able to take into account bad behavior in prison in resentencing somebody under this. But it is unthinkable because it's unconstitutional. Yes, Justice Alito, I agree with you that if there were a situation where a court was increasing the sentence that was given to the defendant based solely on conduct in prison, that could raise constitutional questions. Those questions are not presented in this case because, as I said before, it is not possible to increase a defendant's sentence. You can only decline to give them a reduced sentence. Mr. McCloud? Sorry, Ned, just one last thing. So I come back to my original question. I think it was my first question. If what Congress wanted to say was, in these cases covered by the First Step Act, you just resentenced the defendant. Why didn't they just say that? Why did they use this formulation? Justice Alito, I think it's because Congress did not want a plenary resentencing. As I said before, we think that rules like waiver and forfeiture in law of the case would still apply. So Congress was not wiping the slate clean. It was giving district courts the option to make an exception to finality and to give the defendant a new sentence that's lower relative to their prior sentence. Mr. McCloud? Here's the example. Look, 3553A applies to most sentencing because almost all sentencing statutes don't list factors. They simply say the district court may sentence between zero and 20 years, and they don't even say that. They say the sentence is zero to 20 years. So we go to the sentencing commission to try to regularize it, but the district court has lots of discretion reviewed by a court of appeals. And my real question, I shouldn't have sounded so definite and so forth, and I'm sorry about that. But look, what I don't see is why we wouldn't treat this the same way. And of course, sometimes they could abuse their discretion, sometimes they couldn't. But there must be a reason that you can answer me on that because nobody's really been arguing that. So I come to this and say, I don't understand why. There must be a reason because nobody's arguing it. Well, Justice Breyer, I agree that you should treat it the same. This is not a mechanical adjustment of the sentence. Let's take Mr. Concepcion. You suddenly started to argue this because you wanted to agree with me, but nobody in the briefs or nobody said, look, this isn't such a tough case. The First Circuit writes an opinion that seems to me to make it tougher than necessary. But is there any answer to what I've... You see where I'm coming from. I think, I take your question, Your Honor's question to be, how have courts come to this different conclusion? And the textual hook that the First Circuit relied on is the reference in Section 404B to imposing a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act were in effect at the time of the covered offense. And in our view, the First Circuit misread that language as a limitation on district court's authority. It is not a limitation, but it actually... Oh, I'm sorry. Go ahead. We start with the principle of finality, right? You mentioned that, Mr. McCloud. And then the First Step Act is an exception to that principle of finality and refers to adjusting sentences, as you say, as if Sections 2 and 3 of the Fair Sentencing Act, right? And what concerns me, we have a must and we have a may. We're not discussing may not, but I want to at least make sure that's on the table and why you think that's wrong on may not consider. And the issue, as I understand it, is can the defendant coming in trying to get the benefit of the change in the crack guideline also get the benefit of a change in the career offender guideline based on subsequent developments, even though the commission in Amendment 798 is not retroactive? That's kind of the big-ticket issue as I see it here. And my concern about saying, oh, yeah, you can come in and get the benefit of the change in the career offender guideline is that what about the defendants who are in prison for armed robbery or what have you? They can't use 2255 or 3582 to come in and get the benefit of the change in the career offender guideline. So the people who are coming in for the crack powder issue are being treated differently than those people and getting an extra benefit compared to those people by being able to take advantage of the change in the career offender guideline, even though it's not retroactive. That concerns me about the disparity. That also makes me think the as-if language has some bite here, or at least it should. And I wanted to give you a chance to respond to all that. So, Justice Kavanaugh, let me start with the as-if language, and then I'll turn to the question about disparity. We agree that the as-if language plays an important role in the statute, but it's a very limited role. The as-if language is critical for getting around U.S.C. 109, the federal saving statute, and making sections two and three of the Fair Sentencing Act retroactive. And that's clear from the reference in the clause to the time of the covered offense. As this court explained in Dorsey, that is the point at which criminal penalties affix to a defendant. So all Congress was trying to do in the as-if clause was to make clear that when a court imposes a new sentence, it doesn't have to be bound by the statutory penalties that were previously in effect for that defendant. So it is not a limitation. There are, in fact, limitations in the First Step Act contained in section 404C. So I think to the extent that there's an attempt to read the as-if clause as a limitation, that really is inconsistent with canons like expressio unia. If Congress wanted these defendants to be able to take advantage of changes in the career offender guideline, I have two thoughts. One, why didn't they say that? And two, why is that not available to the thousands of other defendants who are out there who are not in the crack-powder situation but could really benefit from the change in the career offender situation, but they're not allowed to. They can't get under 2255 or 3582. So they're stuck. What about those two things? So Justice Kavanaugh, as to why Congress didn't single out the career offender issue, I think that it's because Congress recognized there were a lot of issues with these defendant sentences. The crack-powder ratio really permeated every aspect of their sentencing. So what Congress did was to create an individualized process where district courts could go through and correct those sorts of problems if it was warranted to do so in a particular case. On the question about disparity, I recognize there may be some difference in treatment between the covered offenders in this case and, for example, a powder offender. But I don't think that disparity is an unwarranted disparity. And that's because Congress has acted here in a very significant way to give a substantial benefit to the crack offenders. So I think, in a real sense, the powder defendant that you're talking about is not similarly situated to the crack defendant who's covered by this law. I would also note that the powder defendant is probably out of jail at this point, because the sentences that were given to the crack offenders were so substantially longer than sentences for any other kind of drug. Last one on this. It wasn't just powder, but all the other defendants who were in for robbery or whatever and could take advantage of the change in the career offender guideline. I guess that's it. But it's a pretty huge difference. The crack advantage that you get coming back, the change in that guideline, gives you some advantage. It gives you from 262 to 327 drops to 188 to 235. But when you throw in the career offender change, you get to 57 to 71. That's enormous, but that's because of the career offender change, not because of the crack pattern. Correct me if I'm wrong on that. Yeah, that's correct, Justice Kavanaugh. Two things on that point. The first is we have to remember this is still a discretionary system. And so if the district court finds that reducing Mr. Concepcion's sentence based on the changes in his career offender status is unwarranted, it can do that. The other point I would make on disparity is that our rule actually addresses that disparity concern by requiring courts to look at 3553A6, which explicitly calls for courts to consider the potential for unwarranted disparity. Counsel Long, the same lines. Yeah, I understand what I'm hearing is basically a lenity argument. Don't assume that we should not give the benefit to some people just because others don't get it. And I understand that argument. But the government has a slightly different policy argument in this field, too, that I want to hear you on. And that is that this is going to be enormously burdensome for district courts. It may be more regular. It may be more administrable. I understand those arguments. So there's no need to repeat those. But this is just going to be burdensome for having to pull out old PSRs out of storage and recreate probation reports and the like. So what are your thoughts about that? Justice Gorsuch, let me talk about the burden in general. And then I'll go to the specific case. So we don't think there is much substantial additional burden. In the typical First Step Act case, where arguments about intervening developments are made, the parties submit briefs on those issues. It's a very limited record. And so it's not a large volume of additional work for the district court. And however the court comes out on the question presented today, these motions are still procedurally available to defendants. And so courts will have to do some amount of work at the end of the day to resolve the motions. In this particular case, we think the analysis is actually not as complicated as the district court suggested. Because we don't think that the statutes that are at issue are divisible. And so there's no need to consult Shepard documents. But if the district court disagrees, I think what I would say is that is just part and parcel of the job of a district court judge to resolve complicated sentencing issues. And this one is no different. Counsel, it seems to me that generally, as a general matter, district courts have a wide range of discretion to impose an appropriate sentence. Even based on disagreements with the guidelines, correct? That's correct. And so my experience, and perhaps you can correct me if I'm wrong, that when Congress wants to limit that discretion, that Congress usually explicitly does so, correct? That's correct, Justice Sotomayor. An example is 3742G, which limits district court's ability to consider current guidelines on resentencing. And so it seems to me that your argument, if I'm correct, is that there's no language in this statute that limits the district court from considering factual or legal changes, correct? That's right, Justice Sotomayor. As I was discussing with Justice Breyer and Justice Kavanaugh, the only language that could conceivably serve that purpose would be the as-if clause in section 404B. And I think that that's an incorrect interpretation of that clause for all the reasons I was explaining. And it's incorrect, and it feels illogical to me. Even the government is arguing that district courts can consider factual changes, but not legal changes, correct? Your Honor, I understand the government's position to be that there are some legal changes that courts could take account of. There are some courts, the Ninth Circuit in the Kelly case is an example, that have held that courts can consider factual changes, but not legal changes. I think that's an illogical- I agree. It just doesn't make any sense. Neither does it make any sense that when a statute says a district court may reduce a sentence, that a district court isn't going to naturally ask itself, is this a person that's deserving of a change? And someone with a very long disciplinary record in prison, or someone, as Justice Alito mentioned, who has killed somebody, that a district court wouldn't say to itself, well, I can't raise a sentence, but I certainly don't think that I should reduce it. And once I accept that that kind of changed circumstance from the original sentencing might influence my decision, that changes in law, and there's a lot of other variety of arguments that could be made that would enter into my consideration, correct? That's right, Justice Sotomayor. And I would note that changes in law can be just as relevant as changes in fact. Changes in law go to the nature and characteristics of the defendant. I would also point out that changes in law will not be uniformly defendant-friendly. So the rule that we're advocating is really an equal opportunity rule that would allow both defendants and the government to point to changes in law that they think are relevant and that bear on whether this individual should get a reduced sentence or not. I think by that you're meaning if a guideline ranges have dramatically increased the sentence, a district court might look at that and say, you know, I might not have thought this crime was so serious back then, but today I understand, for whatever reasons, because of the increased guidelines, things that I didn't appreciate, and I don't think a change is warranted today, correct? That's right, Your Honor. You could also think of the example of the reverse of this case, where a defendant was not sentenced is a career offender initially, perhaps because of some ambiguity in the law. And if that ambiguity is clarified, we think it would be valid for the district court to say, you got a lucky break the first time around because I didn't recognize you really were a career offender. Thank you. I think you're making it a little too easy on yourself when you focus on the as if, as if it were just those two words. The whole point of the statute, the background, the structure, the purpose was limited. It was to change the disparities that were corrected in the Fair Sentencing Act. I don't see anything in this statute that says, because of that fortuity that you benefit or may benefit from that, all bets are off and we're back to the beginning and I can look at anything I want. That seems to be a pretty, you're putting an awful lot of weight on the as if when I think the structure of the statute really doesn't show any objective other than to correct a particularly egregious problem. May I respond, Your Honor? Sure. The reason that we think that Congress would have wanted that result or at least would have allowed that result is because we don't see any language of limitation in the statute that would depart from the normal rule that courts consider relevant information during sentencing. Sentencing is a very difficult process. Many district judges say it's the most difficult thing they do. And in that process, more truthful information about a defendant is always to the better. Justice Thomas, any further? Justice Breyer? Justice Alito? Justice Sotomayor correctly said that district judges generally have a lot of discretion in deciding what sentence to impose, at least while they have it insofar as it's allowed under the Sentencing Reform Act and our court's decisions. But isn't it true that the backdrop here is that there has been a sentence and there would be no ground for reconsidering the sentence were it not for this one provision. So when you have a background rule of prohibition and then you say, you may do this thing, isn't it generally understood that the thing that you may do is just the thing that's set out? It doesn't say, well, that means you can go back and redo the whole thing over again. Well, Justice Alito, the thing that is set out is imposing a new sentence that's lower than the previous sentence. Imposing a new sentence is lower back to the structure and to the as if. But do you deny the fact that the background rule here is that you generally would not be resentenced regardless of intervening changes in the law, regardless of whether your conduct in the intervening years might justify a different sentence? I don't dispute that at all, Justice Alito, and we respect the value of finality in our criminal system, but Congress has done something momentous here with the First Step Act, that is to disrupt finality and to give defendants the opportunity to get a new reduced sentence. And in that process, as I was saying to the Chief Justice, we think that more information about the defendant is always going to benefit the district court and the system as a whole. Justice Sotomayor? No, thank you. Justice Kagan? You know, I guess I'm thinking about the challenge that Justice Alito has posed to you. I would think it's relevant to ask whether there are analogous kinds of resentencings. In other words, are there resentencings that have been prompted because of one particular thing, but that enable or require a judge to take into account the world more broadly? And so I don't know the answer to this question. Are there analogs here? Justice Kagan, I think the most analogous proceeding is a resentencing on a limited remand. That's where the Court of Appeals identifies one problem with the sentence and says, correct that problem. The way that Court of Appeals have treated those sentencings is that they do not bar courts from considering changes in facts or changes in law. And in fact, courts can reconsider even issues that were already decided if they can get around the law of the case or waiver or forfeiture. The way you just answered the question suggested the may answer rather than the must answer. Is that right? On those sorts of resentencings, is there a view that really we have to cover the fields now or is there a view of we can cover the field? So, Your Honor, I think it is actually a must answer because under this court's decision in Pepper, the court said that factual developments are relevant. Courts don't have discretion to ignore relevant developments. With respect to legal developments, it's been an established principle in this court's case law, going back to the schooner Peggy, that a court does not have discretion to ignore changes in the law simply because they happen after an initial sentence. And so in those limited remands, if this court, for example, were to issue a new opinion that bears on some issue in the case, the court could not ignore that. It would have to apply that law. Justice Gorsuch. I would like to follow up on that just briefly. I apologize to my colleagues for extending the proceedings, but Pepper, I thought, said that after a successful appeal on resentencing in the district court, the court may consider evidence of rehabilitation during that period. What do we do with that? Your Honor, I think that what Pepper stands for is the proposition that post-sentencing information can be relevant. So, if the post-sentencing information is relevant, I would think that established principles of decision-making suggest the court has to consider it. It doesn't have to affect the overall decision on the sentence, but it at least has to be considered. So, you do read Pepper as a must-consider? I do read Pepper as a must-consider, Your Honor. Justice Kavanaugh. I do have a couple questions. First, in response to Justice Sotomayor's questions, she's quite right about the discretion that district judges have and disagreement with the guidelines, I think you agreed was a permissible basis for a district judge to rely on when sentencing. So, on resentencing here, whatever the proceeding is, if the district court judge says, I actually don't think someone should get the benefit of the career offender guideline, and therefore I'm not gonna take that into account, the change, is that an abuse of discretion? No, that would not be an abuse of discretion. The only abuse of discretion along those lines I can think of is the one I was discussing with the Chief Justice earlier, where a court has a categorical rule that they won't reduce that. Second, and relatedly, now my experience is in the D.C. courthouse with district judges who span the spectrum of sentencing philosophies, and you're gonna get some who do the career offender thing and really lower these sentences. You're gonna get others who really don't. You know, it's gonna split. And that's gonna be true probably in every courthouse. And is that, you know, should we be concerned about that? I guess your answer is, no, that's just the way sentencing works, which I agree with. I've spent enough time reviewing it, but that seems a mild concern here. That is my answer, Justice Kavanaugh. Our sentencing system is imperfect and it relies on imperfect human beings to make these decisions about other imperfect human beings standing before them. And so there will be some variation in the decisions that get made. I think that's true under any possible rule in this case, though. I think that's probably right. So last question. Does the district judge in the new proceeding have to calculate the new guidelines range based on today? And if they err in that, is that reversible error on appeal? Under a must consider rule, the district court would have to consider the new applicable guidelines and an error in that calculation would be reversible. How about on a may consider? I think not on a may consider. Well, a legal error in the guidelines would be reversible. So if the district court went to the trouble of calculating the guidelines and got it wrong, that would be reversible. But they don't have to do it. But they don't have to do it. Thank you. Thank you, counsel. Thank you. Mr. Guarnieri. Mr. Chief Justice and may it please the court. Section 404 of the First Step Act authorizes a limited sentence reduction proceeding, not a plenary resentencing. By its plain terms, section 404 only requires a district court to take account of one new development, namely the changes to crack cocaine sentencing made by sections two and three of the Fair Sentencing Act. Section 404 does not entitle a defendant to insist that the court consider other unrelated factual and legal developments since the original sentencing, including the more than 75 non-retroactive amendments to the sentencing guidelines that the commission has adopted since 2010. Reading section 404 to create such an entitlement would result in a significant and unjustified windfall for a select subset of crack cocaine offenders who were sentenced before the effective date of the Fair Sentencing Act. Petitioner's principal argument, as you've heard this morning, in favor of such an entitlement rests on the term imposed in section 404, which petitioner would read to incorporate a requirement to redo the section 3553A analysis that a court does in imposing an initial sentence. That argument is inconsistent with the text of section 404 as a whole, in particular with the text of section 404C, as well as with the undisputedly limited scope and nature of sentence reduction proceedings. As the statutory text reflects, the lodestar of any proceeding under section 404 is the defendant's existing lawful sentence. At every single proceeding under section 404, the district court has already fully considered the section 3553A factors at the original sentencing. And the only question before the court is whether to reduce that current sentence. In that context, we think that Congress chose to require district courts to consider only the changes made by sections two and three of the Fair Sentencing Act, and it sensibly left the consideration of other developments to the court's discretion. Welcome to court's questions. Counsel, you seem fairly certain that there is no, that petitioner's argument is foreclosed by the language of the statute. Could you spend a minute on precisely what words you're relying on for your limitations? Sure, so we do think that there are important limitations in the text of section 404B itself. In particular, section 404B requires the district court to engage in this counterfactual inquiry and to determine the statutory and guidelines range that would have applied to the offender at the time of the original sentencing had sections two and three of the Fair Sentencing Act been in effect at that time. Now, in light of the fact that the statute specifies that the court must engage in that counterfactual inquiry, we think there's just no plausible textual basis to read into the statute a requirement to consider other unrelated changes. So you think this language is sort of a negative implication because it mentions this provision, no other considerations can be taken into account? Justice Thomas, I wouldn't say that no other considerations can be taken into account. I would say that the statute does not require the district court to take into account anything else. And that discretionary reading is backstopped by section 404C, which says expressly that a sentence reduction is never required in any of these proceedings. So the watchword here is discretion. This is an entirely discretionary sentence reduction. There is a mandatory decision-making process in the sense that the district court for a covered eligible offender must engage in this counterfactual inquiry. But once the court has done so and figured out this counterfactual punitive range, the choice of a point within that range is left to the court. But I don't see the difference. Petitioner seemed quite willing to accept that also. So I don't see what the daylight is between you and I see the daylight between the mandatory argument. But if petitioner's argument is willing to accept the discretionary approach as you seem to be willing to accept, what's the daylight between you and petitioner with respect to that approach? Well, I'm not sure there is any daylight, Justice Thomas. In seeking this court's review, petitioner argued in favor of a mandatory approach in which district courts would be required to consider these unrelated developments. In his merits brief in this court, petitioner has adopted as his notional fallback position the government's longstanding approach to section 404 under which the consideration of other factors is discretionary, or other factual and legal developments is discretionary. So I think at least with respect to petitioner's fallback argument, there really is not daylight between the parties at this point. You're not, but keep going. Well, there is a significant difference between that approach and the mandatory approach that petitioner has principally advocated for. And under petitioner's mandatory approach in a case like this one, the district court would be required to redo the 3553A analysis from scratch. The court would be required to recalculate the offender's advisory guidelines range in light of numerous amendments that the commission itself declined to make retroactive to a defendant in petitioner's circumstances. And we just don't think there's a basis to read into the statute that kind of burden. Counsel, I understand that everybody seems happy to lose and take the May. But it's interesting that the government has chosen not to defend the must not position. That the ninth circuit among others articulated pretty thoughtfully. And you've mentioned it, alluded to it in your opening remarks, the as if language suggests that you're just doing a counterfactual hypothetical changing one thing and one thing only. And that's the sections two and three of the Fair Sentencing Act. I can understand, I'm kind of where the chief justice was at the beginning of this argument. I can understand that argument. And then I can also understand the May impose suggests if you can impose a sentence, you do it like we have always done it. And that's 3553. I have a very hard time getting my head around that there's some universe in which you may impose a lower sentence, but it's unconstrained by 3553 or anything the Sentencing Commission has said. That's a world, I guess, after Rita and Gall, I just don't recognize. So can you help me first with why the government abandoned the position of the ninth circuit, which I could understand. And to help me understand that with that, which I'm struggling to understand. Sure, Justice Gorsuch, a couple of points. One as detailed in our brief in opposition, I'm not sure it's clear that any court, including the ninth circuit has embraced the kind of. Well, assume they did, okay. Sure, sure. Principally, I mean, we start actually from a quite similar position to one that Mr. McLeod alluded to in the top half of this argument, which is it would really be extraordinary in this context for Congress to have forbidden district courts from taking into account post-sentencing criminality by the Section 404 movement. So if you had a case in which the defendant had committed a serious, had, for example, continued to deal drugs while in prison. I don't understand that argument because surely a district court can consider criminality post-sentencing as a basis for exercising its discretion not to reduce the sentence. That would be one of the 3553A factors, right? Your character, and your activities. That's part of what a judge would do. And surely Congress didn't say you can increase the sentence on the basis of such conduct because a trial would be required. If you're going to increase punishment, you'd need a jury to do that. So there's obvious reasons why that's not the case. So that doesn't work for me. So let's try again. Well, I take the point, Justice Gorsuch, but if you were to really adopt what I'll characterize as a hardline view in which all that the district court is required to take into account. I'm asking you to first address the question, why is the government not pursuing the as-if position, which I attribute at least to the Ninth Circuit and which does strike me as a plausible reason. That's my first question, all right? Let's start there. Justice Gorsuch, perhaps I'm not understanding what it is that you are conceptualizing as that approach. But as I understand it- You must not consider anything other than the Fair Sentencing Act change. And it's a counterfactual hypothetical. The government's saying that's off the table. We're not pursuing that argument. I'm just asking why. Well, again, we don't think that that is a plausible reading of the text here in significant part because if you were to adopt that reading, the implication would be that the sentencing court cannot consider post-sentencing misconduct- That is a rational policy, too, as Justice Alito explained. On a presumption of finality in our criminal justice system, we're not gonna reopen the books for any reason. For any reason. Sure, it would be very strange to impute to Congress a directive to district courts to consider whether to impose a reduced sentence in light of the changes made by the Fair Sentencing Act, but to ignore the fact that the defendant during the intervening period has continued to engage in serious criminal conduct, including potentially drug dealing. But why would that be strange? And if you accept that, if you accept that the district court was, that Congress was unlikely to have required district courts to blind themselves in that way, then I think it follows naturally that district courts could also take a, at least entertain an argument. But counsel, I don't understand why that would be strange. Justice Kavanaugh pointed out that there are horizontal equity arguments because others can't take advantage of, say, the changes in the career offender guidelines. Why is that so outlandish? Well, I take the point, and indeed we make those kinds of horizontal equity arguments in many cases. We think that is a strong reason to reject petitioner's mandatory approach. But my point is just a more modest one, which is that I don't, you know, we certainly think that, for example, district courts, it's a perfectly permissible exercise of a district court's discretion to decline to take into account post-sentencing guidelines amendments that the commission made not retroactive. But it would be strange to take off the table any consideration of post-sentencing misconduct by the defendant, including as in this case, the seven disciplinary infractions that petitioner committed while incarcerated. Well, I have the same reaction as Justice Barrett. I don't only think it would be a reasonable thing, I think it would be the most rational thing. Congress is saying there is a particular problem that we think is really outrageous that we think ought to be fixed and it's this, you know, crack powder disparity and we want you to go fix it. Well, you know, are you worried about this problem? You know, are you worried about this one? Say, no, no, I don't, you know, district judges are busy, so are people in Congress. I don't wanna deal with the whole universe of things that a judge might wanna look at. I've got one problem and I'm gonna deal with that. And then say back when it gets to the district judge, well, we're gonna do a whole bunch of other things. I don't know that Congress would have wanted that. And you can pick particularly egregious examples. There are particularly egregious examples with respect to other people who are not seeking belief under the Fair Sentencing Act and they don't get a restart. I can see Congress saying, we're only dealing with one thing and that's it. And that's certainly what the record looks like. I don't see anything in the record saying it is a good opportunity for us to fix all these other errors that might be out there. Sure, Mr. Chief Justice, let me make a couple of additional points against that position. First, it would be contrary to this court's decision in Pepper, which recognized that in Pepper, to be clear, was a case involving a plenary resentencing after a sentence was vacated on direct appeal. But the court in Pepper was discussing general principles and made clear that ordinarily, a district court is entitled to take into account or has the discretion to take into account post-sentencing conduct in fashioning a sentence in those circumstances. I mean, that just kind of begs the whole question here. Here we have something which is not a plenary review. It's a focused review on the Fair Sentencing Act issue. So I would put Pepper to one side. That's entirely true. The second point I would make, again, we draw a great deal of our argument from the expressly discretionary language of the statute. That is 404B's use of the term may and 404C's clear rule that nothing in the statute requires a sentence reduction in any particular case. So you have that discretionary language. The third point I would make, section 404 motions, and this is in 404B, can be brought by the director of the Bureau of Prisons. There's really no obvious reason why Congress would have authorized the Bureau of Prisons to move under section 404 for sentence reduction unless it is to bring to the district court's attention post-sentencing conduct, because that's really institutionally the only thing that BOP would be positioned to speak to. So again, that's, I mean, it's not positive, but it's another sort of textual hint that Congress didn't mean to take off the table any consideration of post-sentencing. Okay, why have you said nothing about the commission? Is the department disowning the commission or am I making a big mistake? And please tell me or try to tell me if I'm making a big mistake. I thought when the guidelines were originally drawn up and for a long time, what the Fair Sentencing Act is about and what the first step is about are mandatory minimums. Okay, five grams and 50 grams of crack. There also are approximately 48 numbers in between those. And indeed someone can be convicted of four grams of crack. All right, so what the commission did was write some guidelines that were keyed to what was then the 100 to one ratio. When Congress changed it, the commission rewrote those guidelines again with a key. So if we limit this just to the mandatory minimums, what are we gonna find? We're gonna find that where you're talking about four, three, two, and one, for example, and where the commission both rechanged it and made them retroactive to a considerable degree, we will have a big discrepancy. Because we will only be looking at the change from 100 to one to 28 to one. And so that Congress is most unlikely to have wanted that. So I would think that sometimes at least a district court should look at other things such as what the commission did with four grams or six grams or 10 grams. So I would think that was pretty relevant. Now there may be other things which they shouldn't look at which have been mentioned. You know the department is a member of the commission or at least they have a person there. And they can say, let's write our guidelines which are followed by approximately 60 to 80% of the judges though they're absolutely discretionary, to say let's not. What the education office has so far said is it said what you should do, court should consider the guidelines and policy statements along with other 3553A factors during the re-sentence. That's what their staff said. So why is, where I'm puzzled, is why is nobody thinking that any of that is relevant? Well, Justice Breyer, let me just make a couple of quick points about the commission's role in these proceedings. First, the United States does not oppose consideration of the revised drug quantity table in the section 404 proceedings. So in that sense, the district courts are permitted to and indeed are taking account of the commission's handiwork here. The principal locus of a lot of the litigation about these proceedings is the career offender enhancement which I think as Justice Kavanaugh's questions demonstrated earlier, has nothing at all to do with the crack to powder disparity that Congress was addressing in the Fair Sentencing Act and in the First Step Act. The second point I'd like to make about the commission's role here. Section 404 proceedings unfold under the aegis of 18 U.S.C. 3582C1A. 3582C is the provision that generally forbids district courts from modifying terms of imprisonment once they have been imposed. And then the statute has a couple of exceptions to that broad rule. C1A is the exception for compassionate release. C2 is the exception for retroactive guidelines amendments and C1B, the provision implicated here, is for modifications permitted by statute or by Rule 35. Now for C1A and C2, Congress has expressly incorporated a requirement to consider the 3553A factors to the extent applicable. In C1A and C2, both of those provisions direct the sentencing court to consider applicable commission policy statements. C1B, the provision at issue here, contains none of that express language. So there is nothing in 3582C1B that requires a district court to consider any applicable commission policy statement or to otherwise redo the 3553A analysis. And of course, there's nothing in Section 404 either. So there's no clear statutory directive requiring that. Now again, we think that a district court may do so. That's where I, can I interrupt there? Just be clear about your position. You're saying that the district court with respect to changes in the law is not required to consider the changes in the law, but may, is that correct? That's generally correct, Justice Kavanaugh. I mean, that's gotta be a yes or no, I think. Well, I just, I wanna make sure that I'm crystal clear about the way that we think this works. The district court under 404B has to figure out the counterfactual penalty range that would have applied at the time of the initial sentencing if the Fair Sentencing Act had been in effect. The result of that inquiry may well be that the defendant is still subject to mandatory minimum sentences. And the district court, when we say the district court can consider other changes in the law, what we mean is the district court is entitled to say, well, in light of some other changes that reflect different social views about the severity of offense, whatnot, I'm gonna select a point within that range. But the district court can't go below any applicable mandatory minimum. This is a very important question to me. Okay, in figuring out the new range, to figure out the new range that here is 188 to 235, is that the correct new range or is the correct new range 57 to 71, which, as the numbers reveal, is a huge difference? Which of those two is the correct new range here or does the district court have discretion, which of those two to say, here, she's falling? The correct new one is the first one. The as-if clause, we understand, to require the district court to correctly calculate that range as it would have applied at the original time. Got it, so that, and then the district court, in your view, has discretion, though, just correct me if I'm wrong, to say, but I know there's this career offender thing out there that's changed, too, and that would be 57 to 71, and that influences me a lot, so I'm gonna really drop the sentence quite a bit. Your position is that's okay? That's correct. Okay. Now, in this court, we have, I mean, that's basically also- I wanna follow up on that. In what world does it make sense that some district courts will be, take cognizance of changes in the law, and others will not, and the results will be, as Justice Gannon points out, dramatically different for different individuals? I thought the point of imposing the sentence was you looked the defendant in the eyes on the day he stands before you and take the measure of that person as a whole, and to be willfully blind to math  That would normally be an abuse of discretion. Well, as I alluded to in my opening, at every single one of these 404B proceedings, the district court has already done precisely what Your Honor is suggesting. The district court has conducted the full 3553A analysis that applies at the initial sentencing, and the court is not imposing a new sentence. No, we're positing, though, two district courts, one of whom who says, looking at the person before me and deciding how many years this person must spend in federal prison, I take cognizance of the fact that the sentencing guidelines have changed, and here is the commission's current recommendation, and the other one says, I choose not to do so, for no reason, for no reason. Now, if he had a bad behavior in prison, that might be a reason, okay, not to impose a lower sentence, I get that, but just to say, I choose not to, traditionally has never been a good enough reason under this court's precedence to ignore the changes in the commission guidance, intervening law, intervening facts, in looking at an individual in the eye at the time he stands before the court. But your submission, I understand it, is different, and I just don't know another area in which we give lower courts that kind of latitude. Are you aware of any? Well, I think the most obvious example would be a Rule 35 sentence reduction proceeding. What about the original sentencing, too? Sorry to interrupt, but the original sentencing, the district court can say, you know what, I don't agree with this guideline, I'm not following it. That, in fact, a significant percentage of district judges do that now. Well, if we're gonna get into a discussion here, I'd say that they at least have to take cognizance of it and explain themselves, and it can't be, I prefer not to. And so that's my question to you, just to, and I appreciate the friendly amendment, I'll take it as that, to my question. It isn't about whether I disagree with the guidelines, Rita and Gold, of course, leave room for that, but it has to be a reasoned explanation. Here, you're positing something different, and that I'm unfamiliar with, so help me out. That's right, well, as I began to say, this is no different in time from Rule 35 proceedings under which there is no mandate to redo the 3553A analysis. It's not substantially different than a sentence reduction proceeding under C-2, as this court considered in Dillon. There, again, district court is not required to redo all of the analysis that it did at the initial 3553A factors, and more broadly, I mean, it makes sense that Congress would have left the district court's discretion, because in many cases, these are the same district court judges who imposed the original sentence. They are the ones best positioned to know the factors that they found particularly important in their original 3553A calculus, the things that are likely to influence them in making a judgment now, 10 or more years after the fact, of whether a reduction is warranted in light of the water under the bridge in those intervening years, and so Congress left it to their discretion. One more point, Congress solved this. I thought they solved it, because the arguments that you are making, I've heard for decades, okay, in lots of contexts, and the way I thought they solved it was they created a sentencing commission, and now, as discretionary, they said to the district judge, judge, you don't have to apply these rules, and if you don't, give us your reason, and then you can appeal, I thought your sentence, to the courts of appeals, who will decide whether your decision on these matters is reasonable. Now, I mean, that's been going on since 1986, and I don't think it's worked perfectly, but I don't think it's been a disaster, and all I can't understand is why this isn't the same kind of problem, so that we don't have to answer this now. We all, we have to say, is treat it the same as you treat lots of other things in sentencing, and if the commission wants to write a guideline to unify things, it can, and if district courts want to decide different ways, and believe me, if a district court decides something important, and doesn't give any reason, except, oh, that's what I like, which I don't think I've seen, but I feel there are courts of appeals that would sort of take offense at that, and they might say, at least explain, but I mean, I spelled this out, because I don't really see why this is a different problem. Well, I think that's absolutely correct, Justice Breyer, and you know, there is an important backstop here, is the availability of review on appeal for abuse of discretion. You know, the rule we are defending here has been the rule, the operative rule, in numerous courts of appeals for the past several years. We haven't seen a spate of reversals, and to the extent we have, there are cases in which the court is demanding for additional explanation. Let me make sure I understand your argument. Suppose we're dealing with a new guideline issued by the Sentencing Commission that the Sentencing Commission says is not retroactive, okay? Could a district judge say, although the Sentencing Commission has said this is not retroactive, I think it reflects a policy that is appropriate, and I am going to apply it. Could another district judge say the Sentencing Commission has said this is not retroactive, and I don't think that there should be a retroactive change as to this defendant's sentence? Are those both permissible in your view? Yes, they are. And as I hope I clarified in my answer to Justice Kavanaugh earlier, we do think there is a predicate step where the district court has to correctly calculate what the guidelines range would have been at the time of the original offense, but having done that, it is left to the court's discretion whether to take into account these other non-retroactive guidelines. At the end of the day, these are all advisory. Would the judge who takes the second view that they said it was not retroactive, I don't think there should be a retroactive change, would the judge be required to say anything more than that? No. And the same issue as to new factual developments. One judge says, I think we should take these into account because I'm resentencing this person. I want to make sure it's appropriate for this human being who's standing before me. Another judge says, no, this person was sentenced before. I think that the person should get the sentence that this person merited on the day when that person was sentenced. That would be permissible as well? Yes. So why, and so I come back to a question Justice Gorsuch provided to you. Why in the world is that, would Congress want that? I know district judges have some discretion, but the Sentencing Reform Act was intended to eliminate the enormous disparities that existed before then. And our decisions have reduced the strength of that to which the Sentencing Reform Act achieves it. But your argument introduces an enormous amount of discretion. It's hard to understand why Congress would have wanted that. And if they did, why would they have, how can you find that in this language? Well, we think these are just two, these are flip sides of the same coin. Congress did not require district courts to take account of unrelated legal and factual developments beyond the Fair Sentencing Act itself, but so too, it didn't prohibit courts from doing so. The statute is essentially agnostic on that issue. And so we think that leaves to the district courts some discretion to do that. You suggested that there was a backstop of appellate review, but how is appellate review supposed to operate as against such a system? What are they reviewing for? What counts as an abuse of discretion? Abuse of discretion is a familiar appellate standard of appellate review. It's been a standard of review for sentencing decisions. Yes, I know, but you're sort of positing the world in which anybody gets to do anything. So what counts as going, what counts as an abuse? Well, the district court could decline to, for impermissible reasons, such as animus, I think would be an impermissible reason. You could imagine the district court fails to conduct the as-if inquiry correctly. That would be an abuse of discretion. If the district court is trying to recalculate the guidelines range that would have applied at the original sentencing and makes a mistake, that could be an abuse of discretion. No, no, no, but beyond the as-if inquiry, in the world of discretion that you're positing and that people, you know, from different maybe points are saying, huh, why does that middle position make sense? Is there any, you know, are there any bounds to that discretion that you're positing? Well, look, I think, frankly, the result here is going to be substantial discretion for the district courts. Again, these are proceedings that are limited in scope. This is a sentence reduction proceeding. There's already a lawful sentence that was itself the product of the 3553A factors. We're talking here about whether to reduce that sentence in light of a essentially congressional largesse. Congress has created this limited and frankly quite extraordinary opportunity for defendants who were lawfully sentenced at the time to benefit retroactively from Congress's reconsideration of the crack-to-powder ratio and in that very narrow context, we're saying that district courts have discretion about whether or to what extent they want to take into account developments other than the fair sentence. Counsel, much of the questions that I'm hearing or discomfort that some of my colleagues are expressing with the discretion that district courts have, regrettably, that's what led to the sentencing guidelines and to the original mandatory nature. Once we overturn that and return discretion, the fact that judges have different views about factors and how to weigh them is inherent in the sentencing process. Do you agree with that? I do, Justice Sotomayor, and this is not categorically different from that. I mean, just as a judge might give different weight to the 3553A factors, so too in this context, the judge might choose to give different weight to post-sentencing conduct. I mean, there are some judges, and I've known them, who always believe the maximum guideline sentence was the appropriate sentence for any serious crime and they define serious more broadly than most others. Similarly, some people might view a clean disciplinary record as being zero infractions, and other judges may say, if there's one infraction, that's enough for me to say no. That is always inherent in sentencing, and we can rail against it, but I think your point is, and you can correct me, is if Congress wanted to take that discretion away, it would have, as it has done on many other occasions, have said that explicitly, correct? That's absolutely correct. And then on the other side, we don't think there's any sound basis to constrain the district court's discretion in these proceedings by weighting down the proceedings with a requirement to redo the 3553A factors or to take account of any intervening legal or factual developments that the defendant- Or frankly, to weigh it down by saying the only thing the district court can do is look at the original factors, because that then introduces, have they actually calculated it right, becomes more important, correct? That's right. Justice Thomas, anything further? Justice Breyer? Justice Alito? Your argument is that the district court can disregard the 3553 factors if it chooses to, right? Has discretion to do that. It has discretion not to reconsider those factors, although in many cases, we do urge the courts to use them. They're a sensible and familiar framework, but- Yeah, so maybe the scope of the discretion that you seem to suggest in responding to Justice Sotomayor with respect to the post-sentencing guideline, post-Booker world, was a bit exaggerated. There still is discretion, but it's still limited to a substantial degree. Isn't that true? At an original sentencing, sure. We don't think in the sentence reduction proceedings that 3553A operates the same way. And that's consistent with 3553A itself. The prime directive in 3553A is to impose a sentence that is sufficient, but not greater than necessary. And at a sentence reduction proceeding, the district court can only go down. It can't go up, even if its judgment is that a greater sentence is necessary to effectuate the purposes of federal sentencing. So this is just a different proceeding. It's more limited in scope, and we don't think 3553A automatically applies here. What should I do if I think that you are, the government is effectively trying to drive down the middle on the dividing line of a two-lane highway, and really the only choice is to go in one direction or the other direction. So you have to choose between either petitioner's position or the position that you just have to have the, you have to have a resentencing while ruling, while taking and correcting only the specific error mentioned in this provision. Which would you choose? We would prefer to live in a world in which the district court would have to take into account post-sentencing developments. And that's principally because in many, many of these cases, we do rely on arguments about post-sentencing misconduct by the defendant, and we would not want to take those off the table. And where would you find that in the statutory language? Well, for all the reasons set forth in our brief, we don't think that's the correct understanding of the statute. But I took your Honor's question to be, if those arguments are rejected, which is the lesser evil from our perspective? And that would be our answer. Justice Sotomayor, anything further? No, thank you. Justice Kagan? I'd like to ask a similar question of you that I asked to Mr. McCloud. I mean, I find the text here not very useful either way. So that makes me think that we should try to figure out what the most analogous situations are and how courts operate in those situations. I think for the reasons Justice Alito gave, I don't think sentencing generally is analogous. I think you have to look to some resentencings that occur for particular reasons. So in that, tell me what you think the analogs are in resentencings and what the rules are, how much discretion of what kind, what are the rules that operate in what you think of as the best analogs? Sure, so I think the best analog here is a sentence reduction proceeding in light of a retroactive guidelines amendment, which unfolds under 3582C2. And that's the best analog because that is the other circumstance in which a district court has discretion to reduce the sentence in light of retroactive legal changes. Now, they are obviously the change that the commission has made retroactive. Here, it's Congress has created this limited retroactivity provision. But 3582C2 is probably the closest sibling to these proceedings. And in that context, the district court, it is not a de novo resentencing. The court is not redoing the 3553A factors from scratch. It is a proceeding that is limited in scope for all the reasons this court discussed in Dillon. And the court can permissibly decline to take into account other unrelated changes. And indeed, the guidelines require the district court not to take into account other unrelated changes to the guidelines themselves. Justice Gorsuch, Justice Kavanaugh. A couple of quick questions, I hope. First, Justice Gorsuch was talking about the defendant appearing at the new proceeding. And as I follow his questions, I want to make sure, does that always happen or is this sometimes done on the paper? That rarely happens. And indeed, I believe that courts of appeals- What rarely happens, appearing? Yes. These proceedings are principally done on the papers and the courts of appeals have been unanimous so far in concluding that the defendant has no right to an in-person hearing for a section 404 motion. Okay, second, factual changes. In other words, things you've done in prison while you're there. I thought the good time credit system was designed to deal with that. Am I wrong about that? The good time credit system, as modified by the First Step Act itself,  to give defendants the benefit of good conduct in prison. Okay. Third, you said discretion is your number one choice here. Your only argument, really. That means appellate review should be very deferential, correct? Yes. Okay. And last, I think your strongest argument in terms of the big picture is this is the way it's been going in the district courts and courts of appeals in a lot of regions around the country. And I just want to get the government's perspective on have there been problems in these proceedings from the government's perspective or not? No, Justice Kavanaugh. The rule we're advocating here, as detailed in our brief in opposition in this case, has been the majority rule in the courts of appeals, and it's been perfectly administrable in the district courts, and we haven't seen any kind of practical problems with this approach. Thank you. Justice Barrett. Thank you, counsel. Mr. McCloud, I guess I'll call it rebuttal. Thank you, Mr. Chief Justice. Justice Kavanaugh, you asked about good time credits. We agree those are important, and the First Step Act made changes to the way that those are calculated, but they don't take into account some important developments. For example, Mr. Concepcion's religious conversion in prison. A number of prisoners bring that sort of evidence to their First Step Act proceedings, and it's not always accounted for in the good time credits. Justice Kagan, you asked the question of Mr. Guarnieri about the analogous proceeding. He gave a different answer. He referenced 3582C2. I think at the end of the day, it doesn't matter which proceeding you think is most analogous. In fact, I think 3582C2 helps us because the reason this court in Dillon did not allow the defendant to make an argument based on current law is because there was explicit text in the policy statement that was at issue there that said you can't raise those sorts of arguments. The First Step Act doesn't have that sort of limitation, and so we don't see any reason for courts not to be able to consider current law and current facts in First Step Act proceedings. Mr. Chief Justice, you asked a question about why we shouldn't just fix the one problem and leave it at that, and the problem with that approach is that this is not a mechanical adjustment. So in Mr. Concepcion's case, if you make the change from the Fair Sentencing Act, you still have a range of four years of possible sentences that could be given, and looking at Mr. Concepcion as he exists today, and taking account of the good and the bad and relevant legal developments, it's critical in deciding where in that range he should fall. Thank you. Thank you, counsel. The case is submitted.